UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY S. HANN,

                Petitioner,                Case Number 2:10-CV-10797
                                                  Honorable Nancy G. Edmunds

v.

PATRICIA L. CARUSO,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

This matter is before the Court on Petitioner Gary S. Hann's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254.  On September 20, 2002, Petitioner pled no contest in the Oakland Circuit Court to attempting to commit child sexually abusive activity, MICH. COMP. LAWS § 740.145c(2), and using a computer or the Internet to attempt to commit child sexually abusive activity. MICH. COMP. LAWS § 750.145d(1)(a). Petitioner was sentenced to concurrent terms of 2-to-20 years.  He discharged from parole on February 27, 2010, a day after he filed the instant action.  The petition, along with Petitioner's prolix supplemental pleadings and exhibits, enumerate thirteen claims divided into numerous sub-claims. The Court finds that all of Petitioner's claims are  without merit. Therefore, the petition will be denied.  The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal informa pauperis.

### I. Facts and Procedural History

This case arose after Petitioner engaged in a series of internet chats, instant messages, and e-mails with an undercover detective from the Oakland County Sheriff's

Department who posed as a 14-year-old boy. During these communications, Petitioner arranged to meet with the undercover officer for purposes of engaging in sexual activity.

The proceedings in the trial court were straightforward and brief. At a hearing held on September 20, 2002, the court indicated that Petitioner was requesting to plead no contest as charged with the understanding that the court would not impose a minimum sentence exceeding thirty months.

Petitioner was placed under oath. He indicated he was satisfied with the advice of his attorney. He stated he understood that he was pleading no contest to child sexual abusive activity and communicating with another on the internet to commit a crime, and that the maximum sentence he faced was twenty years in prison.

The court explained to Petitioner that if it decided that a minimum sentence exceeding 30 months was required, Petitioner would be allowed to withdraw the plea. Petitioner indicated his understanding, and acknowledged that there was no agreement to reduce or dismiss any of the charges.

The court informed Petitioner of the trial rights he was waiving by entering his plea, including: the right to counsel, the right to a jury or a bench trial, the presumption of innocence, the beyond-a-reasonable-doubt standard, the right to confront prosecution witnesses and present his own witnesses, and the right to testify or remain silent without it being held against him. Petitioner acknowledged his understanding and that he would be waiving these rights by entering his plea.

Petitioner denied that anyone threatened him to obtain the plea, and agreed that it was his own choice to do so. The court referred to the police report as containing a factual basis for the plea, and the attorneys stipulated that it contained facts sufficient to support

-2-

the plea. The court found that the plea was understanding, accurate, and voluntary.

At the sentencing hearing, defense counsel indicated that he and Petitioner had reviewed the presentence information report.  Defense counsel indicated that the report was accurate but should be amended to note that Petitioner quit NAMBLA (North American Man/Boy Love Association)  in 1996. Defense counsel then successfully argued for a reduction in the scoring of the sentencing guidelines, lowering the minimum sentence range from 30-to-50 months to 24-to-40 months.

Petitioner then addressed the court. He did not express any desire to withdraw from the plea, but rather he indicated his sorrow for his actions and acknowledged his responsibility for the crime.

The prosecutor asked for the court to impose the 30 month minimum sentence in light of the agreement, but the court instead imposed a sentence of 24 months-to-20 years in light of the recalculated guidelines.

Following these straight-forward proceedings in the trial court, Petitioner's state appellate court proceedings became complicated and protracted.  Eventually, Petitioner was left to represent himself on appeal, and this led to the Court granting Petitioner habeas relief conditioned on the state providing him with a new direct appeal.  *See Hann v. Harry*, 2008 U.S. Dist. LEXIS 41483 ( E.D. Mich. May 27, 2008).

Thereafter, the state court appointed Petitioner new appellate counsel to pursue an appeal in accordance with the writ.  On September 25, 2008, appellate counsel filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

I. By federal court order, this application must be accepted as timely due to

-3-

previous deprivations of Mr. Hann's constitutional right to appellate counsel as discussed in Halbert v Michigan. The federal court has determined that Mr. Hann is entitled to direct review of his plea-based conviction. Further the law of the case doctrine does not bar Mr. Hann from relitigating claims that were imperfectly raised in his previous, uncounseled appeal.

II. Under this court's published opinion in *People v. Hill*, Gary Hann is entitled to plea withdrawal because the trial court failed to state a proper reason for finding that his plea of nolo contendre was appropriate.

III. Gary Hann's convictions are based on an erroneous interpretation of ambiguous language within the child sexual activity statute, Mich. Comp. Laws § 750.145c. Because this language is ambiguous, it is necessary to resort to other interpretative aids, which establish that that the legislature did not intend to criminalize Mr. Hann's conduct.

IV. The child sexually abusive statute is unconstitutionally vague and overbroad as applied to Gary Hann because it confers unlimited discretion onto law enforcement officials and because it imposes criminal liability upon those who arrange for otherwise legal sexual activity.

Appellate counsel also filed a motion to remand, asserting that the second, third, and fourth claims raised in the application for leave to appeal should be decided by the trial court in the first instance. Petitioner attempted to file a pro se supplemental brief, raising what now form Petitioner's fifth through thirteenth claims. The Michigan Court of Appeals rejected the pleading because Petitioner was represented by counsel.

The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal "for lack of merit in the grounds presented." *People v. Hann*, No. 286812 (Mich. Ct. App. September 5, 2008). It also denied Petitioner's motion for remand.

Petitioner, through appellate counsel, then filed an application for leave to appeal in the Michigan Supreme Court. The application raised the same four claims raised in the state court of appeals. Petitioner filed addition pro se pleadings which were accepted by

-4-

the Michigan Supreme Court.[1]

The Michigan Supreme Court denied the application and the requests for miscellaneous relief by Petitioner in a standard order. *People v. Hann*, No. 137913 (Mich. Sup. Ct. August 6, 2009).

Petitioner then filed the instant application for a writ of habeas corpus, raising thirteen claims with multiple sub-parts, summarized as follows:

I. The Michigan Court of Appeals erred in denying Petitioner's motion to remand.

II. Petitioner is entitled to withdraw his plea because the trial court failed to state a reason why a plea of no contest was appropriate instead of a plea of guilty.

III. Petitioner's conviction is based on an erroneous interpretation of the child sexually abusive activity statute.

IV. The child sexually abusive activity statute is unconstitutionally vague and overbroad.

V. There was an insufficient factual basis supporting Petitioner's plea.

VI. Petitioner is factually innocent.

VII. Petitioner's convictions violate the Fourteenth Amendment because:

A. There is no evidence of his guilt.

B. His actions did not violate any properly interpreted Michigan law.

C. Exculpatory evidence was withheld by the prosecution.

VIII. The trial court never obtained subject matter jurisdiction to try Petitioner.

---

[1]Respondent concedes in its Answer that "on the unique facts of this petition" all of Petitioner's habeas claims meet the exhaustion requirement. Respondent's Answer, p. 18.

IX.  Petitioner's convictions are erroneous because:

    A.  The complaint did not adequately inform him of all the elements of the charges.

    B.  Petitioner was charged with three crimes in a single count.

    C.  Petitioner was not appraised of the nature of the charges.

    D.  Petitioner's counsel and the trial court did not understand the essential elements of the two charges.

X.  Petitioner's convictions are erroneous because:

    A.  The plea was involuntary, unknowing, and unintelligent because the trial court relied on hearsay.

    B.  The plea agreement was violated.

    C.  The prosecutor committed misconduct at the plea hearing.

    D.  The prosecutor committed other acts of misconduct.

XI.  Petitioner's convictions are erroneous because:

    A.  Petitioner was denied the effective assistance of counsel.

        1.  Counsel failed to require proper arraignment in the circuit court.

        2.  Counsel failed to ensure the trial court had personal jurisdiction.

        3.  Counsel failed to require a bill of particulars.

        4.  Counsel failed to conduct an adequate investigation.

        5.  Counsel failed to raise defense under *Thousand*.

        6. Counsel failed to explain essential elements of crimes to Petitioner.

        7.  Counsel strongly encouraged innocent Petitioner to plead.

8. Counsel failed to reveal a $2,500 reduction inducement for participating in plea.

9. Counsel failed to memorialize the plea agreement.

10. Counsel gave a false reason for the no contest plea.

11. Counsel failed to ensure that Petitioner consented to the plea agreement on the record.

12. Counsel failed to require the trial court to give an adequate reason for the no contest plea.

13. Counsel failed to object to hearsay in the police report used to determine the factual basis for the plea.

14. Counsel failed to require a hearing to establish a factual basis for the plea.

15. Counsel stipulated to Petitioner's guilt.

16. Counsel erroneously informed the trial court that it had complied with the court rules in entering the plea.

17. Counsel failed to argue that Petitioner could not be sentenced to more than five years because the crime consisted only of an attempt.

B. Petitioner's was denied the effective assistance of appellate counsel.

1. Counsel failed to raise claim regarding insufficient factual basis for plea.
.
2. Counsel failed to raise claim that crime was not "cognizable."

3. Counsel failed to raise prosecutorial misconduct claim.

4. Counsel failed to raise ineffective assistance of trial counsel claim.

5. Counsel failed to raise involuntary plea claim.

6. Counsel failed to claim Petitioner's innocence.

7. Counsel failed to raise vagueness claim.

8. Counsel failed to raise claim that Petitioner was only guilty of attempting the charged crimes.

9. Counsel failed to move for a hearing on ineffective assistance of counsel.

10. Counsel failed to raise double jeopardy claim.

11. Counsel failed to facilitate timely filing of pro se supplemental brief.

12. Counsel failed to file motions in the trial court.

13. Counsel failed to order a transcript of the arraignment.

14. Counsel failed to federalize the issues presented.

15. Counsel failed to raise Eighth Amendment claim.

XII. Michigan's child sexually abusive activity law is unconstitutionally vague for fifteen enumerated reasons.

XIII. Michigan's use of a computer to attempt to commit a crime law violates equal protection because it punishes a defendant more harshly than if he had completed the offense without a computer.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

-8-

> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

### A. Validity of Guilty Plea

Petitioner was convicted after he pled no contest.  The fact that his conviction is plea-based limits habeas review to whether  the plea was made voluntarily, intelligently,

and knowingly. *Boykin v. Alabama*, 395 U.S. 238, 242(1969); *see also United States v. Broce*, 488 U.S. 563, 570 (1989) (same).

The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). The plea is intelligent and knowing if nothing indicates that the defendant is incompetent or otherwise not in control of his mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748.

A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74(1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984).

Ineffective assistance of counsel can also render a plea involuntary. To prevail on an ineffective assistance of counsel claim on habeas review, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of guilty pleas, the first half of the *Strickland* test is nothing more than a restatement of the standard of attorney competence set forth in *Tollett v. Henderson*, 411 U.S. 258 (1973), and *McMann v. Richardson*, 397 U.S. 759 (1970), holding

-11-

that whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. The second, or "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Under these standards, the Court finds that Petitioner has failed to demonstrate that his plea was invalid, or that the state court's rejection of his claims challenging his plea were objectively unreasonable.

Petitioner's various challenges to the plea process boil down to the following factual bases: (1) an inadequate reason was given for the plea to be a "no contest" plea rather than a guilty plea; (2) a police report was used as the factual basis for the plea; (3) trial counsel did not understand the elements of the charges and therefore erroneously advised Petitioner to accept the plea bargain in the face of a valid defense; (4) counsel reduced his fee by $2,500 to induce Petitioner to accept the plea bargain; (5) counsel failed to assert that Petitioner's maximum sentence could not exceed five years; (6) the plea agreement was violated and not reduced to writing; and (7) Petitioner never consented to the plea agreement on the record.[2]

---

[2] These allegations are relied upon by Petitioner to support various legal arguments appearing principally in Claims II, V, IX(D), X(A)-(C), and XI(A)(4)-(17).

None of these allegations undermine the validity of Petitioner's plea. With respect to Petitioner's challenge to the inadequacy of the reasons given for the no contest plea, the claim does not concern the voluntariness of his plea. No-contest pleas are essentially admissions of all the elements of the charged offense and are treated the same as guilty pleas for purposes of a case in which the no-contest plea is entered. *See Lott v. United States*, 367 U.S. 421, 426 (1961); *People v. New*, 427 Mich 482, 493 n (1986). Under state law, other than the means by which a court determines the accuracy of the plea under Michigan Court Rule 6.302(D)(2), there is no distinction between no-contest and guilty pleas for purposes of the plea hearing. Therefore, whether or not the court or parties articulated an adequate reason for the plea to be a no contest one rather than a plea of guilty does not impact the voluntariness of the plea. Petitioner claims he had a state remedy that was ignored by the state courts under *People v. Hill*, 86 Mich. App. 706 (1978). This is beside the point. That case is based on the state court's interpretation of the requirements of the Michigan Court Rules; it does not concern the constitutionality of the plea itself.

With respect to Petitioner's challenges to the factual basis for his plea, there is no federal constitutional requirement that a factual basis be established to support a guilty or no contest plea. *See Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975). So long as a plea is intelligently and voluntarily entered, the federal constitution does not mandate that a factual basis supporting a guilty plea be established, or even that the defendant admit factual guilt. *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 582-583 (E.D. Mich. 2001).

Although Michigan Court Rule 6.302(D)(1) requires that a factual basis must be elicited from a defendant before accepting a plea, no federal constitutional issue is raised by the failure of a Michigan trial court to comply with a state law or court rule concerning establishing the factual basis of a guilty or no contest plea. *Holtgreive*, 174 F. Supp. 2d at 582. "[T]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes." *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). Petitioner's claim that the trial court failed to establish a sufficient factual basis to support his no-contest plea does not provide a basis for federal habeas relief. Moreover, under Michigan law, a police report can provide a sufficient factual basis to establish a no contest plea. *See People v. Harvey*, 146 Mich. App. 631, 381 N.W.2d 779, 781 (1985). Petitioner's challenge to the factual basis supporting his plea does not affect the constitutional validity of his plea.

Next, Petitioner asserts that his counsel did not understand the elements of the offenses and therefore failed to realize that a valid defense was available to the charges. This allegation fails because it is based on an interpretation of state law that had been rejected by the state courts at the time of Petitioner's plea.

Essentially, Petitioner asserts that Michigan's child sexually abusive activity law, properly interpreted, requires that a defendant's conduct involves the creation or dissemination of child pornography. He asserts that the law did not apply to his case which, at most, involved an attempt to engage in sexual relations with a minor.

The statute at issue provides:

(2) A person who persuades, induces, entices, coerces, causes, or knowingly

-14-

allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $ 100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

MICH. COMP. LAWS § 750.145c(2)

In *People v. Thousand*, 241 Mich. App. 102, 104-105, 113-117 (2000), rev'd in part on other grounds, 465 Mich. 149 (2001), the Michigan Court of Appeals held that an individual like Petitioner, who engages in sexual communications with a perceived minor and attempts to set up a meeting to share sexual contact, is subject to criminal liability under this statute as "*a person who attempts* or prepares or conspires *to arrange for*, produce, make or finance any *child sexually abusive activity* or child sexually abusive material." *Id.* at 114-116 (emphasis added). *See also People v. Adkins*, 272 Mich. App. 37, 46-47 (2006). In other words, Petitioner did not have a defense based on the fact that he was not alleged to have been engaged in child pornography at the time of the offense. Petitioner's plea was not rendered involuntary or unknowing by his trial counsel's "failure" to raise and pursue a meritless defense.

Petitioner also asserts that his counsel induced the plea by reducing his fee by $2,500. An attorney reducing a fee agreement because a trial will not be required is not the type of promise or inducement that renders a plea involuntary. For promises to undermine the voluntariness of a plea, they "must by their nature [be] improper as having

-15-

no proper relationship to the [attorney's] business (e.g. bribes)."' *Brady*, 397 U.S. at 755. The fee reduction in this case is not comparable to a bribe, and did not render the plea involuntary.

Petitioner also contends that his counsel failed to assert that his maximum sentence could not exceed five years.  Petitioner notes that MICH. COMP. LAWS § 750.92(2) provides that a conviction for an attempt to commit a crime that is punishable between five years and life carries a maximum sentence of five-years.   However, under state law, this statute applies only when no express provision is made to punish a criminal attempt in the specific penal statute at issue. *See Wayne County Prosecutor v. Recorder's Court Judge,* 177 Mich App 762 (1989).  As noted above, the child sexually abusive activity statute expressly sets forth a maximum sentence of twenty years for a person who attempts or prepares to arrange for any child sexually abusive activity.   Therefore, Petitioner's plea was not rendered involuntary for his counsel's failure to assert this meritless argument.

Petitioner next asserts that his plea was invalid because the plea agreement was not reduced to writing and its terms were violated.  There is simply no requirement that, for a plea to be voluntary, and plea agreement must be placed in writing.  Furthermore, the terms of the agreement were placed on the record and provided that if the minimum sentence were to exceed 30 months, then Petitioner would be permitted to withdraw his plea.  The court imposed a minimum term of 24 months, therefore there was no breach of the plea agreement.

Finally, Petitioner asserts that he never consented to the plea agreement on the record.  That allegation is false:

Trial Court: Do you understand you are pleading no contest to the offense of

-16-

child sexual abusive activity and communicating with another on the internet to commit a crime?

Petitioner: Yes.

Trial Court: The most time you can get is 20 years, understand?

Petitioner: Yes.

Trial Court: The full extent of the Cobb agreement being in the event I feel it necessary to incarcerate you greater than 30 months, as the minimum sentence, you will be permitted to withdraw your plea, do you understand?

Petitioner: Yes.

Trial Court: And there is no plea agreement to reduce or dismiss any charge, understood?

Petitioner: Yes.

Plea Tr. at 3.

Moreover, the record of the plea proceeding demonstrates that Petitioner's plea was voluntary, intelligent, and knowing. Nothing in the record indicates that Petitioner was incompetent or otherwise not in control of his mental faculties, was unaware of the nature of the charges, or was not advised by competent counsel. The record shows that Petitioner had "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady, supra* at 748. He was informed of the terms of the agreement, the maximum penalty, and all the trial rights he was waiving. Petitioner denied that there were any threats made to obtain his plea, and he testified that it was his own choice to do so.

Accordingly, the Court rejects Petitioner's challenges to voluntariness of his plea.

## B. Claims Waived by the Valid Plea

Petitioner's valid no contest plea acts to waive many of his other claims. A valid guilty plea in a criminal proceeding generally forecloses claims arising from the alleged

deprivation of constitutional rights occurring before the entry of the plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267.

The Supreme Court has explained:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Id.*

Notwithstanding this general rule, the Supreme Court has also held that a guilty plea does not bar a constitutional challenge that "goes to the very power of the State to bring the defendant into court to answer the charge brought against him," *Blackledge v. Perry*, 417 U.S. 21, 29 (1974), at least to the extent that such a challenges is unrelated to the question of factual guilt established by virtue of the plea, *see Menna v. New York*, 423 U.S. 61, 63 n.2 (1975). Generally, a "claim that [the defendant] was prosecuted under an unconstitutional statute goes to the very power of the government to invoke criminal process against him, and is not barred by his guilty plea." *United States v. Gaertner*, 583 F.2d 308, 311 (7th Cir. 1978); *United States v. Broncheau*, 597 F.2d 1260, 1262 n.1 (9th Cir. 1979).

Claims waived by Petitioner's valid plea include: III (interpretation of statute); VI (claim of innocence); VII (lack of evidence); IX(A)-(C) (errors in charging documents); X(D) (pre-plea prosecutorial misconduct); XI(A)(1)-(3) (Inadequate trial counsel not involving validity of plea itself).

-18-

With respect to Petitioner's challenges to the interpretation of the child sexually abusive activity statute, his argument is that his alleged conduct did not constitute a violation of the statute.  Even to the extent he claims that the application of the statute to his conduct represented a judicial expansion of the statute which was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964), the claim is waived by his plea. To obtain relief on this claim, Petitioner would be required to show that, in fact, his conduct was not made illegal by the then-existing interpretations of the statute. However, by entering his plea, Petitioner effectively admitted that his conduct did violate the statute as it then existed. Thus, consideration of Petitioner's claim would require the resolution of factual issues which were resolved by his plea. Resolving Petitioner's claim would require the Court to consider additional factual evidence, and such an inquiry is "foreclosed by the admissions inherent in" petitioner's nolo contendere plea. *Broce*, 488 U.S. at 576.

> That is, essentially, Petitioner
>
> seeks to avoid his sentence on the ground that an allegation of the indictment-namely, that he [committed child sexually abusive activity]-is contradicted by the evidence. By pleading guilty . . . , however, [Petitioner] conclusively admitted the allegation. By seeking to contradict the plea, [Petitioner] is, in effect, challenging the validity of the plea. He cannot prevail, because his challenge is to the factual basis of the plea-not to its consensual character.

*United States v. Mathews*, 833 F.2d 161, 165 (9th Cir. 1987) (citing *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984)).

The same thing holds true for Petitioner's claim that he is actually innocent.  The very nature of the no contest plea is to waive his right to challenge the truth of the charges made against him.  Accordingly, courts have held that those claims waived by a guilty or

-19-

no contest plea include claims of actual innocence. *United States v. Dungee*, 228 Fed. Appx. 298, 303 (4th Cir. 2007); *Nagele v Lewis*, 878 F.2d 1438, 1989 WL 74787, *2 (9th Cir. 1989).

Not surprisingly, Petitioner's challenges to the sufficiency of the evidence that the prosecutor could have presented at trial are likewise waived. By entering a nolo contendere plea, Petitioner waived his right to challenge the sufficiency of the evidence to convict him. *See United States v. Manni*, 810 F.2d 80, 84 (6th Cir. 1987); *See also United States v. Hawkins*, 8 Fed. Appx. 332, 334 (6th Cir. 2001).

Likewise, any claimed defects in the charging documents–such as inadequate notice of the charges, or combining multiple crimes in a single count–were waived when he plead no contest. *See Snyder v. Lafler*, 2011 U.S. Dist. LEXIS 7788 ( E.D. Mich. Jan. 27, 2011), citing *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001).

The same thing holds true for Petitioner's claims of pre-plea prosecutorial misconduct and ineffective assistance of counsel.  *See United States v. Stiger*, 20 Fed. Appx. 307, 309 (6th Cir. 2001); *Siebert v. Jackson*, 205 F. Supp. 2d 727, 733-34 (E.D. Mich. 2002)(habeas petitioner's claims regarding alleged deprivations of his constitutional rights that occurred before his guilty plea, as a result of his trial counsel's alleged ineffective assistance, were foreclosed by his guilty plea); *United States v. Ayantayo*, 20 Fed. Appx. 486, 487-88 (6th Cir. 2001)(A plea of guilty or nolo contendere waives a defendant's right to claim pre-plea claims of prosecutorial misconduct).

## C.  Claims not Cognizable on Habeas Review

Two of Petitioner's claim's that are not waived by his plea, are not cognizable in this

action because they are claims arising under only state law.

Petitioner's first claim asserts in part that the Michigan Court of Appeals erred when it failed to grant his motion for remand to have the trial court decide some of his claims in the first instance. He also asserts that this Court's prior decision granting him habeas relief required the state appellate court to grant his motion.

Violations of state law and procedure which do not infringe specific federal constitutional protections are not cognizable claims on federal habeas review of state court convictions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Contrary to Petitioner's contention, whether the Michigan Court of Appeals erred in its application of MICH. CT. R. 7.211 in denying Petitioner's motion to remand for an evidentiary hearing on the first three claims raised by his appellate counsel is a question of state law that cannot be reviewed in a federal habeas petition. *See Hayes v. Prelesnik*, 193 Fed. Appx. 577, 584 (6th Cir. 2006).

Moreover, the order denying the motion for remand did not violate the conditional grant entered in Petitioner's first habeas case. The Court order stated:

> Within ninety (90) days from the date of this order, the State of Michigan shall appoint counsel for Petitioner. Appointed counsel shall file an application for leave to appeal in the Michigan Court of Appeals. If counsel is not appointed or if the Michigan Court of Appeals does not accept the application for filing, Petitioner should advise this Court, and the court will provide further relief as law and justice requires.

*Hann v. Harry*, 2008 U.S. Dist. LEXIS 41483 ( E.D. Mich. May 27, 2008).

Nothing in this order directs the state courts to hold a hearing on any of Petitioner's claims in the trial court, or compelled the court of appeals to grant a motion to remand.

Petitioner also asserts that various errors by the prosecutor and in the state district

and circuit courts deprived the state court of jurisdiction to try him.  This claim is likewise not cognizable in federal habeas review. *See Samel v. Jabe*, No. 90-1216, 1990 U.S. App. LEXIS 20327 (6th Cir. Nov. 19, 1990); *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976). A habeas petitioner is not entitled to habeas relief based upon an alleged violation of the Michigan Constitution. *See Hudson v. Berghuis*, 174 F. App'x 948, 952, n.1 (6th Cir. 2006); *see also Doyle v. Scutt*, 347 F. Supp.2d 474, 485 (E.D. Mich. 2004).

## D.  Remaining Claims

Two claims remain: Petitioner's constitutional challenges to the child sexually abusive activity law, and his allegations of ineffective assistance of appellate counsel. Neither one has merit.

Petitioner claims that the child sexually abusive activity law is unconstitutionally vague.  In essence, he argues that because the statute prohibits "preparing to arrange for" sexually abusive conduct with a child, an ordinary person is not put on adequate notice about what conduct is prohibited.  He also asserts that the law violates his rights under the Equal Protection Clause because it punishes a person caught in a victimless sting operation more severally than one who actually commits fourth-degree criminal sexual conduct.[3]

Due process requires that laws give people of ordinary intelligence fair notice of what is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Supreme Court has indicated that "[t]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what

---

[3]The argument headings also use the term "overbroad" but nowhere else in his pleadings does Petitioner purport to develop a First Amendment claim.

conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). A law thus fails to comport with the Due Process Clause of the federal constitution "if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits...." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03 (1966). The problem with a vague law or statute is that it "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned*, 408 U.S. at 108-09. Vagueness is an "as applied" test: to challenge a statute for vagueness, a person must show that the statute is vague as applied to him. *Parker v. Levy*, 417 U.S. 733, 753-58 (1974).

Here, the language of § 750.145c(2) does not fail to provide a person of ordinary intelligence fair notice of what is prohibited. As this court previously found, "the statute expressly prohibits arranging or planning to do anything sexual with a child. The language used to prohibit the act is not so vague that a person of common intelligence must necessarily guess at its meaning." *Hann v. Harry*, No. 06-CV-13478, 2007 U.S. Dist. LEXIS 66200 (E.D. Mich. Sept. 7, 2007).

Furthermore, Petitioner must demonstrate that the statute is vague as applied to his specific conduct. Petitioner engaged in internet communications with a person he believed to be a fourteen-year-old boy for purposes of arranging a sexual encounter. According to Petitioner's pleadings, a specific meeting time and place was discussed. See Petition, p. 28. As applied to this conduct, the language in the statute that prohibits "*a person who attempts* or prepares or conspires *to arrange for*, produce, make or finance any *child sexually abusive activity* or child sexually abusive material," is not unconstitutionally vague.

-23-

Quite clearly, Petitioner attempted to arrange for child sexual abusive activity. It was only an attempt because the person was not actually a child. It was an arrangement because Petitioner communicated with the undercover officer over the internet to set up a meeting place and time. And it was sexual abusive activity because the arrangements were made for the purpose in engaging sexual activity with a child. See Mich. Comp. Laws § 750.145c(1)(l). An ordinary person would be put on notice that Petitioner's conduct was prohibited by the statutory language.

Petitioner's equal protection claim fairs no better. The Equal Protection Clause mandates that all persons who are similarly situated should be treated alike. *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). Nevertheless, "[t]o withstand Fourteenth Amendment scrutiny, statutes that do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest." *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002), citing *City of Cleburne*, 473 U.S. at 440.

Legislation which does not classify by race, alienage, national origin, or gender and which does not impinge on personal rights protected by the Constitution need only be rationally related to a legitimate state interest. *Cleburne*, 473 U.S. at 440. Under the rational basis standard, the challenging party bears the burden of demonstrating that there is no rational connection between the legislation and a legitimate state interest. *See Harrah Independent School Dist. v. Martin*, 440 U.S. 194, 198 (1979).

Petitioner does not assert that he is the member of any protected class or that there is any fundamental right at issue. Instead, he argues that there is no rational reason why persons in his class–those who attempt to arrange for a sexual encounter with a child but

are actually communicating with an undercover officer–should be punished more severely than the class of people who actually commit criminal sexual conduct with real children. Petitioner points out that a violation of the child sexually abusive activity statute carries a twenty year penalty whereas a violation of fourth-degree criminal sexual conduct carries a maximum penalty of two years.  See MICH. COMP. LAWS § 750.520e.

Of course, this is a false dichotomy.  The classes are not mutually exclusive.  A person who communicates over the internet with a real child, arranges for a sexual encounter, and then follows-though and commits criminal sexual conduct would be guilty of both offenses, and therefore is not subject to less punishment than a person in Petitioner's position, who was unable to follow-through on his plans.  Moreover, while the penalty for fourth-degree criminal sexual conduct (which involves sexual contact short of penetration with a child between 13 and 16 years old) may be less severe than Petitioner's offense, that is not the case for all violations of Michigan's criminal sexual conduct laws. A person who follows-through and sexually penetrates a child between the ages of 13 and 16 is guilty of first-degree criminal sexual conduct and is subject to life imprisonment in additional to any sentence he receives for violating the child sexually abusive activity law. See MICH. COMP. LAWS § 750.520b(1)(c); People v. Ward, 206 Mich. App. 38, 43 (1994). Accordingly, Petitioner equal protection challenge fails because he has not shown how Michigan law irrationally punishes his conduct more severely than more harmful conduct.

Finally, Petitioner claims that he was denied the effective assistance of appellate counsel during his renewed direct appeal.  He asserts that his appellate counsel was ineffective for failing to properly raise the claims presented in this petition that were not included in the application for leave to appeal filed in the Michigan Court of Appeals.

-25-

Because the underlying claims are all without merit, Petitioner was not prejudiced by appellate counsel's failure to raise them.  *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001))("[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'").

Accordingly, Petitioner's cognizable claims are without merit.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.  The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims.  The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V. Conclusion

-26-

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  July 2, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 2, 2012, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager